## J. W. HUGHES v. STATE.

No. A-7596.   Opinion Filed Nov. 29, 1930.
(293 Pac. 1108.)

W. B. Garrett, for plaintiff in error.

J. Berry King, Atty. Gen., for the State.

EDWARDS, P. J.   The plaintiff in error, hereinafter called defendant, was convicted in the county court of Greer county on a charge of manufacturing intoxicating liquor and his punishment fixed at a fine of $50 and imprisonment for a term of 30 days in the county jail.

This case must be reversed for several reasons. The search warrant under which the evidence was obtained was a blanket warrant. It directs the search of the south-

east quarter of section 15, township 5 north, range 22 west, a quarter section of land. The record discloses that there were four houses and a negro shack on this tract of land. The four houses were occupied by white families, each in a separate house. Section 7012, Comp. St. 1921, requires that the affidavit shall describe as particularly as may be the place to be searched. In conformity to this statute, this court has held that the search warrant must describe the place with such particularity that the officer to whom it is directed may determine it from the warrant and that no discretion as to the place to be searched is left to the officer. Smith v. State, 40 Okla. Cr. 366, 269 Pac. 376. A blanket warrant to search several different places or houses is a violation of the statute. Cornelius on Search and Seizure, § 129.

The record discloses that the officers making the search found a ten-gallon jar and a five or six gallon jar containing "home-brew." It is not clearly shown that the brew was intoxicating, or that it contained more than one-half of one per cent. of alcohol measured by volume, or that it was capable of being used as a beverage. An excerpt from the testimony for the state is as follows. Mr. Rude testified:

"* * * A. Well, we looked around the house and in the house, in the dugout, around the chicken houses and different places, and we found in the house, under the table in the dining room, two jars of what I called home-brew. * * *

"Q. What was in those jars, Mr. Rude? A. Well, it was brew. * * *

"Q. I will ask you if home-brew is beer? A. We call it beer. * * *

"Q. I will ask you if that was intoxicating liquor? A. Well, I figure—(Objection) A. My opinion is—(Ob-

jection) A. This hadn't fermented very much when we was there. It wasn't what they call ripe.

"Q. Would you say if you drank a sufficient amount of it, it would intoxicate you? A. That is my opinion. * * *"

Then upon being closely pressed by the state and assisted by the court, the witness said:

"* * * Q. Would you say it was capable of being used as a beverage? A. Yes, sir, I think so. * * *

"Q. I will ask you if it wasn't in a state of just beginning to work? A. Just beginning to work a little."

Then on cross-examination he said:

"Q. As a matter of fact at the time you tasted it, it wasn't ready for use as a beverage? A. Not as regular beer, I wouldn't judge.

"Q. Not as regular beer, just some sort of sweet syrup? A. Just beginning to taste a little bad.

"Q. At that time it wasn't ready and capable of being used as a beverage? A. That is my judgment.

"Q. It had just started to working and you couldn't tell at that time how strong it was? A. Yes, sir, that is my judgment, it had just began to ferment."

None of the other witnesses particularly strengthened the testimony upon this point.

In the course of the trial the trial judge several times interrupted the proceedings to state his opinion of the law and the Constitution, and other matters, which may have had a tendency to influence the jury in returning as they did a verdict of guilty. The evidence is not sufficient to sustain the judgment.

The case is reversed.

DAVENPORT and CHAPPELL, JJ., concur.